**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JOHNNIE N. ROBERTS**                                     **CIVIL ACTION**

**VERSUS**                                                          **NO. 14-2119**

**N. BURL CAIN, WARDEN**                               **SECTION: "G" (1)**

<u>**ORDER**</u>

Before the Court are Petitioner Johnnie N. Roberts' ("Petitioner") objections[1] to the Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Petitioner, a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, arguing that the State withheld exculpatory evidence and that his trial counsel was ineffective.[3] The Magistrate Judge recommended that the matter be dismissed with prejudice as untimely filed.[4] Petitioner objects to the Magistrate Judge's recommendation.[5] After reviewing the petition, the Magistrate Judge's Report and Recommendation, the objections, the record, and the applicable law, the Court will overrule Petitioner's objections, adopt the Magistrate Judge's recommendation and dismiss this action with prejudice.

---

[1] Rec. Doc. 28.

[2] Rec. Doc. 27.

[3] Rec. Doc. 1.

[4] Rec. Doc. 27.

[5] Rec. Doc. 28.

# I. Background

## A.    *Factual Background*

On March 12, 2002, a jury in the Orleans Parish Criminal District Court convicted Petitioner of forcible rape, intentional exposure to the AIDS virus, and second degree kidnapping.[6] On May 1, 2002, Petitioner was adjudicated a multiple offender by the trial court.[7] On May 30, 2002, Petitioner was sentenced to the following terms of imprisonment: life imprisonment without benefit of probation or suspension of sentence on the forcible rape conviction; ten years imprisonment on the intentional exposure to the AIDS virus conviction; and forty years imprisonment without benefit of parole, probation or suspension of sentence on the second degree kidnapping conviction.[8] The trial court ordered the sentences to run concurrently.[9] On March 26, 2003, the Louisiana Fourth Circuit Court of Appeal affirmed Petitioner's convictions and sentences.[10] On April 23, 2004, the Louisiana Supreme Court denied Petitioner's related writ application.[11]

Petitioner subsequently filed an application for post-conviction relief with the state district court on August 26, 2004.[12] The court denied this application on September 7, 2004,[13] and again

---

[6] State Rec., Vol. I of VII, Trial Transcript at *187, Mar. 12, 2002.

[7] State Rec., Vol. I of VII, Hearing Transcript, May 1, 2002.

[8] State Rec., Vol. II of VII, Hearing Transcript, May 30, 2002.

[9] *Id.*

[10] *State v. Roberts*, 02-KA-2520 (La. App. 4 Cir. 3/26/03), 844 So. 2d 263.

[11] *State ex. rel. Roberts v. State*, 2003-1453 (La. 4/23/04), 870 So. 2d 294.

[12] State Rec., Vol. I of VII, Application for Post-Conviction Relief, Aug. 26, 2004.

[13] State Rec., Vol. I of VII, Judgment, Sept. 7, 2004.

on September 30, 2004,[14] after Petitioner sought clarification of the earlier judgment.[15] Petitioner

filed another post-conviction application and several related motions with the state district court

on February 9, 2005.[16] The state district court denied relief on April 26, 2005.[17] Petitioner's related

writ applications were denied by the Louisiana Fourth Circuit Court of Appeal on June 22, 2005,[18]

and by the Louisiana Supreme Court on April 24, 2006.[19]

On June 21, 2013, Petitioner filed a post-conviction application with the state district court

claiming that: (1) the State withheld evidence that the victim was taking psychotropic medications

at the time of the crime; and (2) his trial counsel was ineffective for failing to investigate the

victim's mental state.[20] The district court dismissed this application as untimely on August 20,

2013.[21] Petitioner's related writ applications were denied by the Louisiana Fourth Circuit Court of

Appeal on October 9, 2013,[22] and by the Louisiana Supreme Court on July 31, 2014.[23]

Petitioner filed his federal habeas petition on September 15, 2014, claiming that: (1) the

State withheld evidence that the victim was taking psychotropic medications at the time of the

crime; and (2) his trial counsel was ineffective for failing to investigate the victim's mental state.[24]

---

[14] State Rec., Vol. I of VII, Judgment, Sept. 30, 2004.

[15] State Rec., Vol. I of VII, Letter to Court, Sept. 12, 2004.

[16] State Rec., Vol. I of VII, Application for Post-Conviction Relief, Feb. 9, 2005.

[17] State Rec., Vol. I of VII, Judgment, Apr. 26, 2005.

[18] *State v. Roberts*, No. 2005-K-0743 (La. App. 4 Cir. 2005); State Rec., Vol. VI of VII.

[19] *State ex. rel. Roberts v. State*, 2005-2040 (La. 4/24/06); 926 So. 2d 533 (La. 2006).

[20] State Rec., Vol. VII of VII, Application for Post-Conviction Relief, June 21, 2013.

[21] State Rec., Vol. I of VII, Judgment, Aug. 20, 2013.

[22] *State v. Roberts*, No. 2013-K-1352 (La. App. 4 Cir. Oct. 9, 2013); State Rec., Vol. I of VII.

[23] *State ex. rel. Roberts v. State*, 2013-2649 (La. 7/31/14), 146 So. 3d 205.

[24] Rec. Doc. 1.

The State filed a response, asserting that the petition should be dismissed as untimely.[25] Petitioner filed a reply arguing that the petition is timely because it was filed within one year of the date on which the factual predicate of his claim could have been discovered through the exercise of due diligence.[26]

## B.     Report and Recommendation Findings

On May 3, 2016, the Magistrate Judge recommended that the petition be dismissed with prejudice as untimely.[27] The Magistrate noted that Subsections A and D of the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") statute of limitations could apply.[28] Pursuant to Subsection A, a federal habeas petition must be filed within one year of the date that the petitioner's conviction became final.[29] The Magistrate Judge determined that Petitioner's conviction became final on July 22, 2004, ninety days after the Louisiana Supreme Court denied his writ application.[30] Accordingly, Petitioner was required to file his federal habeas corpus petition by July 22, 2005, unless the limitations period was extended through tolling.[31]

The Magistrate Judge determined that Petitioner was entitled to some statutory tolling under 28 U.S.C. § 2244(d)(2).[32] The Magistrate found that Petitioner first tolled the statute of limitations on August 26, 2004, after 34 days of the limitations period had run, when he filed his

---

[25] Rec. Doc. 18.

[26] Rec. Doc. 19.

[27] Rec. Doc. 27 at 4.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

first post-conviction application with the state trial court.[33] Because Petitioner did not seek review of the state trial court's September 30, 2004 order denying relief, the Magistrate Judge determined that the statute of limitations resumed running no later than November 2, 2004, when the time to file for supervisory review expired.[34] The Magistrate Judge found that Petitioner again tolled the statute of limitations after an additional 98 days of the limitations period had elapsed by filing a post-conviction application with the state district court on February 9, 2005.[35] The Magistrate Judge found that tolling continued until the Louisiana Supreme Court denied relief on April 24, 2006.[36] When the statute resumed running, Petitioner had 233 days, until December 13, 2006, to file his federal application.[37] Because Petitioner did not file any claim for post-conviction relief before December 13, 2006, the Magistrate Judge determined that Petitioner was not entitled to further statutory tolling.[38] The Magistrate Judge also found that Petitioner produced no evidence to support equitable tolling.[39]

The Magistrate Judge noted that in *McQuiggin v. Perkins* the United States Supreme Court held that actual innocence will allow a Petitioner to overcome AEDPA's one year statute of limitations.[40] Here, Petitioner asserts that he recently discovered a medical form indicating that the victim was taking medications with potential side effects that might have impaired her mental

---

[33] *Id.* at 5.

[34] *Id.*

[35] *Id.* at 6.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 7.

[40] *Id.* (citing 133 S. Ct. 1924, 1928 (2013)).

faculties.[41] The Magistrate Judge determined that even if the medical form could be considered "new evidence" for purposes of *McQuiggin*, it does not rise to the level such that no reasonable juror would have found Petitioner guilty.[42] Accordingly, the Magistrate Judge determined that the federal habeas petition was untimely under Subsection A.[43]

Finally, the Magistrate Judge analyzed the timeliness of the petition under Subsection D, which provides for commencement of AEDPA's one-year limitations period on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[44] Petitioner argued that he could not discover the factual predicate to his claim until February 6, 2013, when he received a copy of the district attorney's file, which contained an emergency services form indicating that the victim was taking medications with potential side effects that might have impaired her mental faculties.[45] Because Louisiana law provides that a district attorney's file is a public record subject to disclosure when the conviction becomes final, the Magistrate Judge determined that the emergency services form could have been discovered, at the latest, when Petitioner's conviction became final on July 22, 2004.[46] Accordingly, the Magistrate Judge determined that Petitioner's application was untimely under Subsection D.[47]

---

[41] *Id.* at 12.

[42] *Id.*

[43] *Id.*

[44] *Id.* at 13 (quoting 28 U.S.C. § 2244(d)(1)(D)).

[45] *Id.*

[46] *Id.* at 14.

[47] *Id.*

## II. Objections

### A.    *Petitioner's Objections*

Petitioner objects to the Magistrate Judge's Report and Recommendation.[48] First, Petitioner argues the merits of his ineffective assistance of counsel and *Brady* claims.[49] Petitioner contends that "[w]hen the prosecution withholds the evidence, it forfeits any claim to a procedural default. Because it is the state which caused the default."[50] Next, Petitioner argues that the "actual innocence" exception applies.[51] Finally, Petitioner argues that the Magistrate Judge's finding that the victim's prescription information was available when his conviction became final is "the wrong lens to look at this through."[52] Rather, he argues that "[t]he proper lens is that this evidence should have been disclosed before, after and or after [sic] trial, but instead, the state held it as long as they deemed it necessary."[53]

### B.    *State's Opposition*

The State of Louisiana did not file a brief in opposition to Petitioner's objection.

## III. Standard of Review

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[54] A district judge must

---

[48] Rec. Doc. 28.

[49] *Id.* at 2–8.

[50] *Id.* at 4.

[51] *Id.* at 8.

[52] *Id.*

[53] *Id.*

[54] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

"determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[55] A district court's review is limited to plain error of parts of the report which are not properly objected to.[56]

## IV. Law and Analysis

### A.      AEDPA Statute of Limitations

The AEDPA establishes a one-year statute of limitations for the filing of habeas corpus applications, which shall run from the latest of:[57]

A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[58]

The Magistrate Judge found the limitation period established by Subsection A and Subsection D applicable here.[59] Petitioner does not object to that determination. Accordingly, the Court will assess the timeliness of the petition under both subsections.

---

[55] *Id.*

[56] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objection from ten to fourteen days).

[57] 28 U.S.C. § 2244(d)

[58] *Id.*

[59] Rec. Doc. 27 at 64.

**B.      *Timeliness Under Subsection A***

The Magistrate Judge found that the petition was untimely under Subsection A. Petitioner does not object to that determination. Accordingly, the Court reviews that finding for plain error.

Applying Subsection A, the United States Fifth Circuit Court of Appeal has explained:

> When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. However, "[i]f the defendant stops the appeal process before that point," . . . "the conviction becomes final when the time for seeking further direct review in the state court expires."

> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. Louisiana Supreme Court Rule X, § 5(a) states that an application "to review a judgment of the court of appeal either after an appeal to the court . . . or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal."[60]

The AEDPA provides for statutory tolling during "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."[61] In other words, the AEDPA's limitations period does not run while a petitioner seeks collateral review of his conviction in a state court in a procedurally proper manner. "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the

---

[60] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (citations omitted).

[61] 28 U.S.C. § 2255(d)(2)

form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee."[62]

The United States Supreme Court has held that, in rare circumstances where a petitioner's habeas corpus application would be otherwise untimely, the AEDPA's statute of limitations may be subject to equitable tolling.[63] To establish entitlement to equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[64] A petitioner bears the burden of establishing entitlement to equitable tolling and "must demonstrate rare and exceptional circumstances warranting application of the doctrine."[65] As the Fifth Circuit has recognized, these circumstances exist "only in situations where 'the [petitioner was] actively misled . . . or [was] prevented in some extraordinary way from asserting his rights.'"[66]

Petitioner does not object to the Magistrate Judge's determination that the federal habeas petition is untimely under Subsection A. Petitioner's conviction became final on July 22, 2004, 90 days after the Louisiana Supreme Court denied his writ application. The limitations period ran for 34 days until August 26, 2004, when Petitioner filed his first application for post-conviction relief with the state trial court.[67] That application was denied on September 30, 2004,[68] and the statute of limitations resumed running on November 2, 2004, when the time to seek further review

---

[62] *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted).

[63] *Holland v. Florida*, 560 U.S. 631, 645 (2010).

[64] *Id.* at 649 (internal quotation marks omitted).

[65] *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

[66] *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002) (quoting *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999).

[67] State Rec., Vol. I of VII, Application for Post-Conviction Relief, Aug. 26, 2004.

[68] State Rec., Vol. I of VII, Judgment, Sept. 30, 2004.

expired.[69] The statute of limitations ran for an additional 98 days, until Petitioner filed another post-conviction application in the state trial court on February 9, 2005.[70] The limitations period resumed when the Louisiana Supreme Court denied relief on April 24, 2006,[71] and continued to run for the next 233 days until it expired on December 13, 2006. Petitioner filed his federal petition on September 15, 2014, well beyond the one-year statutory deadline, and Petitioner has not shown that he is entitled to equitable tolling. Accordingly, reviewing for plain error and finding none, the Court adopt the Magistrate Judge's finding that Petitioner's application was untimely under Subsection A.

**C.    *Timeliness Under Subsection D***

Petitioner contends that 28 U.S.C. § 2244(d)(1)(D) should govern the beginning of the one-year statute of limitations period for his filing a federal habeas petition, delaying the commencement of the statute of limitations until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[72] Petitioner asserts that he became aware that the victim was taking medications with potential side effects that might have impaired her mental faculties on February 6, 2013, when he received a copy of an emergency services form found inside a copy of the district attorney's file.[73] The Magistrate Judge found this argument unavailing because Louisiana law provides that a district

---

[69] *See Grillette v. Warden, Winn Corr. Ctr.*, 372 F.3d 765, 769–71 (5th Cir. 2004) (a state application ceases to be pending when the time for supervisory review expires).

[70] State Rec., Vol. I of VII, Application for Post-Conviction Relief, Feb. 9, 2005.

[71] *State ex. rel. Roberts v. State*, 2005-2040 (La. 4/24/06); 926 So. 2d 533 (La. 2006).

[72] 28 U.S.C. § 2244(d)(1)(D).

[73] Rec. Doc. 1 at 14.

attorney's file is a public record subject to disclosure when the conviction becomes final.[74] Petitioner objects to this determination, arguing that the Magistrate Judge's finding that the victim's prescription information was available when his conviction became final is "the wrong lens to look at this through."[75] Rather, he argues that "[t]he proper lens is that this evidence should have been disclosed before, after and or after [sic] trial, but instead, the state held it as long as they deemed it necessary."[76]

The relevant inquiry under Subsection D is not the date the fact in question was actually discovered, but the date it could have been discovered with reasonable diligence.[77] A copy of the emergency services form is contained in the state court records from Petitioner's 2002 direct appeal to the Louisiana Fourth Circuit.[78] Further, even assuming that Petitioner did not have access to the emergency services form at that time, it could have been discovered as soon as the district attorney's file became available to him. Louisiana law provides that a district attorney's file is subject to disclosure as a public record when the underlying conviction becomes final.[79] Because Petitioner could have gained access to the district attorney's file and emergency services form contained therein when his conviction became final, Subsection D would gain Petitioner no delay of the commencement date than that already available to him under Subsection A. Accordingly, on de novo review, the Court finds the petition is untimely under Subsection D.

---

[74] Rec. Doc. 27 at 14.

[75] Rec. Doc. 28 at 8.

[76] *Id.*

[77] 28 U.S.C. § 2244(d)(1)(D).

[78] State Rec., Vol. IV of VII.

[79] *See* La. Rev. Stat. Ann. § 44:3(A)(1).

### D.      *Actual Innocence*

Finally, Petitioner objects to the Magistrate Judge's finding that the "actual innocence" exception does not apply.[80] Accordingly, the Court reviews this issue de novo.

A petitioner can overcome the one-year statute of limitations imposed by the AEDPA if he can establish "actual innocence." In *McQuiggin v. Perkins*, the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations."[81] The Court allows this exception to prevent a "fundamental miscarriage of justice."[82] However, the Court cautions that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"[83]

Here, Petitioner was convicted of forcible rape, intentional exposure to the AIDS virus, and second degree kidnapping.[84] Petitioner's guilt was established at trial by the victim's testimony and other corroborating testimony.[85] At trial, the victim testified that on September 18, 2001, she was standing outside of her home when a champagne-colored Cadillac pulled up beside her and the driver, whom she identified as the defendant, pushed her into the car.[86] The victim testified

---

[80] Rec. Doc. 28 at 8.

[81] 133 S. Ct. at 1928.

[82] *Id.* at 1926.

[83] *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

[84] State Rec., Vol. I of VII, Trial Transcript at *187, Mar. 12, 2002.

[85] *State v. Roberts*, 02-KA-2520 (La. App. 4 Cir. 3/26/03); 844 So. 2d 263, 265–68.

[86] *Id.* at 267.

that Petitioner locked the doors of the car and drove toward Algiers.[87] The victim testified that she noticed a temporary license plate in the car with Petitioner's name on it.[88] According to the victim's testimony, Petitioner stopped the car in a park, where he raped her.[89] The victim testified that she escaped from the car and ran away.[90] She testified that she then knocked on three or four houses until someone let her into their home.[91] A married couple testified that they answered their front door to find the victim wearing only a ripped shirt, covered in blood with hair ripped from her head.[92]

The victim's mother testified that the victim told her the name of the assailant, and the mother convinced a DMV worker to search Petitioner's name in the DMV computer.[93] The search produced photographs of four men sharing Petitioner's name, and the victim identified Petitioner.[94] The victim testified that she chose Petitioner's photograph out of a lineup compiled by the New Orleans Police Department after viewing the picture at the DMV.[95] Sergeant Bossetta, of the New Orleans Police department, testified that a photographic lineup containing Petitioner's picture was

---

[87] *Id.*

[88] *Id.* at 268.

[89] *Id.* at 267.

[90] *Id.*

[91] *Id.* at 268.

[92] *Id.* at 265–66.

[93] *Id.* at 267.

[94] *Id.*

[95] *Id.* at 268.

shown to the victim on the date of the rape.[96]  He also testified that Petitioner's champagne-colored Cadillac was discovered a few days later.[97]

A victim's testimony alone is generally sufficient evidence to support a conviction.[98] Petitioner argues that the victim's testimony is called into doubt by the emergency services form, which indicates that the victim was taking Trazodone and Wellbutrin, medications with potential side effects that might have affected her mental faculties, at the time of the crime.[99] The emergency services form is contained in the state court records from Petitioner's direct appeal to the Louisiana Fourth Circuit.[100] Therefore, the emergency services form likely should not be considered "new evidence." Moreover, even assuming that the emergency services form is "new evidence," it is insufficient to meet Petitioner's burden of showing his actual innocence. A claim of actual innocence does not "merely require a showing that a reasonable doubt exists in the light of new evidence, but rather that no reasonable juror would have found the defendant guilty."[101] Evidence that the victim was taking medication with potential mental side effects does not rise to that level. Accordingly, on de novo review, the Court finds that Petitioner has not shown that the *McQuiggin* actual innocence exception should apply.

---

[96] *Id.* at 268.

[97] *Id.*

[98] *See Peters v. Whitley*, 942 F.2d 937, 941–42 (5th Cir. 1991); *see also Fetterly v. Whitley*, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); *Holderfield v. Jones*, 903 F.Supp. 1011, 1017 (E.D. La. 1995).

[99] Rec. Doc. 28 at 4.

[100] State Rec., Vol. IV of VII.

[101] *Schlup*, 513 U.S. at 329.

## V. Conclusion

For the reasons stated above, the Court finds that the petition is time-barred. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's objections are **OVERRULED**;

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Magistrate Judge's recommendation and Petitioner Johnnie N. Roberts's petition for issuance for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** and **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA,** this   27th   day of December, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

16